UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NEIL NICHOLAS ADAMS,

                                        **DECISION AND ORDER**
                    Petitioner,         **No. 11-CV-84**

        -vs-

ERIC H. HOLDER, Attorney General
of the United States;

MICHAEL PHILIPS, Field Office Director
Office Director for Detention and
Removal, Buffalo Field Office;

BUREAU OF IMMIGRATION AND CUSTOMS
ENFORCEMENT;

DEPARTMENT OF HOMELAND SECURITY; and

MARTIN HERON, Facility Director,
Buffalo Federal Detention Facility


                    Respondents.


_____

## I.   **Background**

*Pro se* petitioner Neil Nicholas Adams ("Adams" or "Petitioner"), an alien under a final order of removal, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his continued detention in the custody of Respondents ("Respondents" or "the Government").

Petitioner is a native and citizen of Jamaica, who entered the United States, on an unknown date and at an unknown place, without inspection of an immigration officer. See Declaration of Donald J.

1

Vaccaro, Jr. ("Vaccaro Decl."), dated March 17, 2011, ¶ 5 (Exhibit 1 of Respondent's Answer and Return).  In February 1992, Petitioner was convicted of attempted criminal sale of a controlled substance in the third degree under the alias Michael Thomas.  Id. ¶ 6.  On February 22, 1992, Petitioner was released on bail from the custody of the New York City Police Department pending sentencing from that drug conviction.  Id. ¶ 7.  He subsequently failed to appear for sentencing.  Id. ¶ 8.  On April 28, 1992, Petitioner's drug conviction was abated after a death certificate in the name of Michael Thomas was sent to the state court.[1]  Id. ¶ 9.

Approximately five years later, in September 1997, Petitioner filed an application for an immigrant visa and alien registration under his true name, Neil Nicholas Adams.  On the application, Petitioner indicated that he had never committed a crime related to a controlled substance violation.  Petitioner was granted lawful permanent resident status.  Id. ¶ 10.  On September 13, 1999, Petitioner entered the United States at New York, New York as a lawful permanent resident.  Id. ¶ 11.  On February 28, 2008, Petitioner presented himself for admission into the United States

---

[1]

According to the DHS Record of Deportable/Inadmissible Alien form (Exhibit A at 24 of the Vaccaro Decl.), "Adams pled guilty on 2/20/1992 to attempted Criminal Sale of a Controlled Substance-3rd degree, but when it came time to the sentence date Adams fled to Jamaica and sent a Jamaican Death certificate to the Queen's D.A. office to show that Michael K. Thomas had died; fingerprint comparison by the FBI indicated that Neil Adams and Michael K. Thomas is the same person."

at New York, New York as a returning lawful permanent resident. During an immigration inspection, it was determined that Petitioner was wanted on an outstanding bench warrant issued by the Supreme Court, State of New York, County of Queens. Petitioner was paroled into the United States until March 27, 2008, for the pending criminal investigation. Id. ¶¶ 11, 12. On March 19, 2008, Petitioner was re-paroled to the custody of the New York City Police Department for criminal prosecution. Id. ¶ 13. Thereafter, on December 16, 2008, Petitioner was sentenced in the Supreme Court, State of New York, County of Queens, to two to six years imprisonment for his attempted criminal sale of a controlled substance in the third degree conviction. Id. ¶ 14.

Petitioner was placed in removal proceedings by a Notice to Appear, dated February 19, 2009, which charged him, pursuant to Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II), with being subject to removal from the United States as an alien who has been convicted of a controlled substance offense; and pursuant to INA § 212(a)(2)(c), 8 U.S.C. § 1182(a)(2)(c), as an alien who is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance. These charges were subsequently withdrawn by DHS. Id. ¶ 15. On or about April 28, 2009, Petitioner was served with Additional Charges of Inadmissibility/Deportability, which added another factual

3

allegation to the charging document and alleged removability under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien, who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document and a valid unexpired passport, or other suitable travel document, or document of identity and nationality. Id. ¶ 16. On or about June 23, 2009, Petitioner was served with another Additional Charges of Inadmissibility/Deportability, which charged him with being subject to removal pursuant to INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who by fraud or willfully misrepresented a material fact sought to procure a visa, other documentation, or admission into the United States. Id. ¶ 17.

Upon his release from the custody of the New York State Department of Correctional Services, Petitioner was received into DHS custody on August 13, 2009. Id. ¶ 18. On February 24, 2010, an immigration judge denied Petitioner's application for cancellation of removal pursuant to INA § 240A(a), 8 U.S.C. § 1229b(a) and ordered Petitioner removed from the United States to the United Kingdom or Jamaica. Petitioner appealed the decision to the Board of Immigration Appeals ("BIA") and filed a motion to reopen with the BIA. Id. ¶ 19.

On July 1, 2010, the BIA dismissed Petitioner's appeal and denied the motion to reopen. Id. ¶ 20. Six days later, DHS sent

a Request for Acceptance of Alien to the Consulate General of the United Kingdom in New York, New York, on behalf of Petitioner. The British consulate denied Petitioner's request to enter the United Kingdom upon his removal from the United States. Id. ¶ 21. Thereafter, DHS sent a presentation packet to the Consulate General of Jamaica in New York, New York, requesting that a travel document be issued for Petitioner's removal. Id. ¶ 22.

On July 21, 2010, Petitioner filed in the United States Court of Appeals for the Second Circuit a petition for review of the BIA's order of July 1, 2010. His petition for review was accompanied by a request for stay of removal, which was granted. Id. ¶ 23; Adams v. Holder, No. 10-2923 (2d cir. filed July 21, 2010) attached as Ex. A of Supplemental Affidavit of Assistant United States Attorney Gail Y. Mitchell, dated May 22, 2012 ("Mitchell Supp. Aff.").

On July 28, 2010, DHS served Petitioner with a formal Warning for Failure to Depart, along with an instruction sheet listing actions that Adams was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. Vaccaro Declaration ¶ 24.

On October 7, 2010, Petitioner filed a motion to reopen which was denied by the BIA on December 9, 2010. Id. ¶ 25. On October 7, 2010, Petitioner filed a second motion to reopen which was denied by the BIA on December 9, 2010. Id. ¶ 26.

In accordance with immigration regulations, DHS reviewed Petitioner's custody status in October 2010, and, on October 26, 2010, Petitioner was notified that DHS determined to continue his detention pending the disposition of his federal litigation. Id. ¶ 26. Petitioner is currently held at the Buffalo Federal Detention Facility in Batavia, New York, pending his removal from the United States. Id. ¶ 27.

## II. Discussion

In the habeas petition, Petitioner challenges the legality of his continued detention under Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioner claims that his continued detention pending his removal violates his constitutional rights to procedural and substantive due process. See Petition ("Pet." at 21-23. As discussed below, the habeas petition is denied as premature since Petitioner still awaits the outcome of his pending petition for review in the Second Circuit.

Section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(1), provides that, after a removal order has been issued, the Attorney General must remove an alien from the United States within ninety days. This "removal period" commences on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the

removal of the alien, the date of the court's
final order.

(iii) If the alien is detained or confined
(except under an immigration process), the
date the alien is released from detention or
confinement.

8 U.S.C. § 1231(a)(1)(B).

In Zadvydas, the Supreme Court held that after the ninety
days, the post-removal-period detention provision, 8 U.S.C.
§ 1231(a)(6), implicitly limits an alien's detention to "a period
reasonably necessary to bring about that alien's removal from the
United States" and does not permit indefinite detention. Id. 689.
The Supreme Court further held that six months is a presumptively
reasonable period of detention. Id. 701. "After this 6-month
period, once the alien provides good reason to believe that there
is no significant likelihood of removal in the reasonably
foreseeable future, the Government must respond with evidence
sufficient to rebut that showing." Id. 701. To state a claim
under Zadvydas, the alien not only must show post-removal-order
detention in excess of six months but also must provide evidence of
a good reason to believe that there is no significant likelihood of
removal in the reasonably foreseeable future. Id.

On January 12, 2012, the Second Circuit granted Petitioner's
request for a stay of removal. See Adams v. Holder, Second Cir.
No. 10-2923 (Ed Cir. Jan. 12, 2012), attached as Dkt. No. 115
(Ex. A of Mitchell Supp. Aff.). This stay of removal remains in

effect while Petitioner's petition for review is pending in the Second Circuit. In view of the stay of removal, § 1231(a)(1)(B)(ii) applies as the latest of the three events set forth in § 1231(a)(1)(B), and the ninety-day removal period has not yet commenced. See Singh v. Holmes, 02-CV-529F, 2004 U.S. Dist. LEXIS 30471 at *13 (W.D.N.Y. Oct. 8, 2004) ("Singh's filing of a Petition for Review seeking the Second Circuit's review of the BIA's . . . decision affirming the IJ's . . . decision, and the Second Circuit's order that Singh's removal to Guyana be stayed pending such judicial review, operates to prevent commencement of the 90-day removal period until the Second Circuit has judicially reviewed the Final Removal Order as to Singh.") (citing 8 U.S.C. § 1231(a)(1)(B)(ii)). Because of the ongoing stay of removal in this case, neither the 90-day removal period nor the presumptively reasonable six-month period has begun. See Wang v. Ashcroft, 320 F.3d 130, 145-46 (2d Cir. 2003) (six-month period runs concurrent with 90-day removal period). Petitioner seeks release before the expiration of the presumptive six-month removal period and, therefore, his constitutional challenges to his detention under Zadvydas are premature. See, e.g., Arthur v. Gonzales, Nos. 07-CV-6158(CJS)(VEB), 07-CV-6473(CJS)(VEB), 2008 WL 4934065, at *15 (W.D.N.Y. Nov. 14, 2008) (citation omitted).

Moreover, Petitioner has not established that his removal to Jamaica will not be reasonably foreseeable once the petition for

review is resolved and the stay is lifted.  <u>See</u> <u>Zadvydas</u>, 533 U.S. at 701-02.  The <u>Zadvydas</u> Court held that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," stating that the alien petitioner has the burden of "provid[ing] good reason to believe that there is no [such] likelihood" before the government respondents would be required to provide rebuttal evidence."  <u>Zadvydas</u>, 533 U.S. at 701.

The record before this Court reflects that DHS submitted a presentation package to the Consulate General of Jamaica in July 2010, which included copies of Adams's immigrant visa registration, birth certificate, original passport, photographs, and fingerprints.  <u>See</u> Vaccaro Decl., ¶ 29.  Moreover, in support of its opposition to the habeas petition, the Government has submitted an email dated May 16, 2012 from Deportation Officer Daniel Henderson.  According to Officer Henderson, "'[t]he Jamaican Consulate has stated that a travel document will be issued once [Adams's] appeal is exhausted.'"  Henderson email, dated May 16, 2012 attached as Ex. B to Mitchell Supp. Aff.).  As such, Petitioner does not have a viable claim under <u>Zadvydas</u> at this time, and his petition is denied.

This denial is without prejudice with leave to re-file in the event that Petitioner's circumstances change such that his removal no longer appears likely to occur in the reasonably foreseeable

future.  See generally Khan v. Herron, 10-CV-0161(MAT), 2011 U.S. Dist. Lexis 118870, at *17-18 (W.D.N.Y. Oct. 14, 2011) (denying habeas petition raising Zadvydas claim without prejudice with leave to re-file in event petitioner's circumstances changed such that removal no longer likely to occur in reasonably foreseeable future).

## III. Conclusion

For the foregoing reasons, the habeas corpus petition is denied without prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      June 4, 2012
            Rochester, New York